ETHAN STREETER v. HUGH J. McMILLAN AND THE
PENOBSCOT LUMBER & DOCK COMPANY.

*Log lien—Notice.*

1. The notice provided for in ordinary attachment suits, where
service is had by attaching property, and the defendant can-
not be found, is insufficient to confer jurisdiction over either
the principal defendant or the log-owner in proceedings to
enforce labor liens under Act No. 229, Laws of 1887.

2. Act No. 229, Laws of 1887, was probably intended to authorize
a notice which should give the same information as to the
nature of proceedings to enforce liens thereunder as is given
by ordinary attachment notice in regard to attachment suits.

3. The following propositions are summarized from the opinion of
Mr. Justice CAMPBELL:

*a*—In the case of an ordinary attachment the suit is brought
to recover a personal obligation, and nothing more, and the
property seized is seized as defendant's own property to satisfy
his debt, and not because of any claim against the property
itself, and such a notice as the general attachment law
requires is as full for purposes of information as could be
needed.

*b*—It cannot be true that in the absence of personal service
there can be any valid constructive notice which does
not plainly and distinctly inform those who see it of the pre-
cise nature of the proceeding. Still less can a notice be valid
which misleads.

*c*—It is a principle of universal jurisprudence that there can
be no jurisdiction without adequate notice.

*Error to Newaygo.* (Palmer, J.) Argued January 11,
1889. Decided February 15, 1889.

Attachment under log-lien law. Defendant company
brings error. Reversed. The facts are stated in the
opinion.

*Smiley & Earle,* for appellant, contended:

1. Proceedings under the log-lien law are special, and must conform strictly to the statute in all respects; citing *Woodruff v. Ives,* 34 Mich. 320; *Clark v. Adams,* 33 Id. 159; *Thompson v. Thomas,* 11 Id. 274; *King v. Harrington,* 14 Id. 532

2. A court cannot take jurisdiction of a personal action against a non-resident who is not cited, but it may proceed against property of his that is within the State; citing Waples, Attachment, 334, 335.

*George Luton* and *M. W. Underwood,* for plaintiff, contended:

1. The Penobscot Lumber & Dock Co. cannot raise the question of jurisdiction over the property, over itself, or over McMillan, for the first time in the appellate court. Its entry of appearance, plea of the general issue, and litigation of the whole matter is a waiver of any defects, if there were any; citing *Webb v. Mann,* 3 Mich. 140: *Stone v. Welling,* 14 Id. 524; *Burson v. Huntington,* 21 Id. 427; *Parsons v. Dickinson,* 23 Id. 59; *Hyde v. Tenwinkel,* 26 Id. 96; *Manhard v. Schott,* 37 Id. 234; *Slattery v. Hilliker,* 39 Id. 573; *Thompson v. Association,* 52 Id. 522.

2. In other writs of attachment the service, where not personal, is made by publication; citing How. Stat. §§ 8003, 8005; and after a bond has been given to release the property, the obligors are not permitted to question the validity of the writ; citing *Goebel v. Stevenson,* 35 Mich. 172; *and for other authorities,* see *Thompson v. Thomas,* 11 Mich. 274; *King v. Harrington,* 14 Id. 532; *Wells v. Walsh,* 25 Id. 344; *Millar v. Babcock,* 29 Id. 526; *Pennoyer v. Neff,* 95 U. S. 714; *Goodman v. Niblack,* 102 Id. 563; *Williams v. Stewart,* 3 Wis. 773.

3. The notice of publication contains every requirement of the statute; and the statute of 1887 is remedial and useful, and ought not to receive a narrow and technical construction; citing *Babcock v. Cook,* 55 Mich. 7.

4. The following cases discuss the liberality and wisdom of the log-lien law; citing *Shaw v. Bradley,* 59 Mich. 199; *Reilly v. Stephenson,* 62 Id. 509; *Winslow v. Urquhart,* 39 Wis. 260; *Oliver v. Woodman,* 66 Me. 54.

CAMPBELL, J. This is a proceeding under Act No. 229, Laws of 1887, providing for the enforcement of liens on lumber, and similar products of labor. The laborers

entitled to liens consolidated their claims in the name of Streeter to the amount, as claimed, of $1,863. McMillan was the contractor with whom they worked. The property pursued was 2,000,000 feet of saw-logs in Newaygo county. The summons, which was dated February 17, 1888, and returnable March 6, 1888, directed the sheriff to attach this parcel of logs, or so much as should be sufficient to satisfy the sum before mentioned, and to summon McMillan to answer to Streeter in damages to the amount of $3,000, and, in case he was not the owner of the logs, then to serve the writ on such owners, their agent or attorney, if known and residing in the State. The sheriff, on March 6, the return-day, made return of seizure of the property, but that McMillan could not be found in the State. He further returned that the owners of the property resided in Milwaukee, Wis., and that he had not been able to find their representative, agent, or attorney. On March 14, 1888, a notice was published, and thereafter continued, in a newspaper in Newaygo, which entitled the cause as a personal suit between Streeter and McMillan, and stated that on February 17 a writ of attachment was issued at plaintiff's suit—

"Against the goods and chattels of Hugh J. McMillan, defendant named in said writ, and against the said goods and chattels, in whosesoever possession the same should be found, in case the said Hugh J. McMillan was not the owner thereof, for the sum of $1,863, being the amount sworn to be due in the affidavit attached to said writ, which was made returnable March 6, 1888, and upon which property has been attached, and personal service not obtained for reasons stated in the return indorsed on said writ."

The Penobscot Lumber & Dock Company, the owner of the logs, bonded them, and, after declaration filed, appeared to defend on their own behalf, and not for McMillan. Declaration was filed against both McMillan

and the company as defendants, described as having been duly summoned, etc., on April 30, 1888, and the company pleaded May 3. On July 23 judgment was rendered against McMillan by default, and execution ordered to include an order for selling the property to pay the judgment.

Several errors are assigned, but the principal one, being on a question of jurisdiction, is the one chiefly urged. It is claimed that the publication was not such as to confer jurisdiction. The statute is silent concerning such publication, or what it shall contain. It is claimed for plaintiff that it was authorized by section 11 of the statute, which is this:

"All writs of attachment issued under the provisions of this act by any of the circuit or justice courts of this State shall be served and returned as ordinary writs of attachment are served and returned in said courts, respectively, except as herein otherwise provided, and the pleadings and all subsequent proceedings shall be the same as in other cases of attachment, except as herein otherwise provided," etc.

This section differs from the corresponding one in the statute of 1881 (How. Stat. § 8422), by leaving out the clause in that act which provided it should not be necessary to make an inventory and appraisement. In the present case no inventory was made, and there was no appraisement; but it is not necessary, in our view, to consider this.

The general attachment law, by section 8003, How. Stat., provides that where service is had by attaching property, and defendants cannot be found, a notice may be published,—

"Which notice shall state the names of the parties, the time when, from what court, and for what sum, the writ was issued, and when the same was returnable."

The writ required the attachment of the goods "of the defendant not exempt from execution."

In the case of an ordinary attachment the suit is brought to recover a personal obligation, and nothing more, and the property seized is seized as defendant's own property to satisfy his debt, and not because of any claim against the property itself. No question is involved but defendant's indebtedness, and no seizure of any one else's property would be valid. The sole issue is the existence of a personal obligation standing alone. Such a notice as the general attachment law requires is as full for purposes of information as could be needed. The property seized is not seized because it is in any way related to the debt, but because it is defendant's property, and the judgment, if he does not appear, is paid out of it, because it has been seized in pledge for such payment as his own.

It cannot be true that in the absence of personal service there can be any valid constructive notice which does not plainly and distinctly inform those who see it of the precise nature of the proceeding. Still less can a notice be valid which misleads. If the statute of 1887 can be so construed as to include by inference power to give notice in case there is no personal service, it can only be by giving it such a construction as will secure the same results. The statute, which makes express provision for the case of owners who are not the contractors with whom the plaintiffs deal, and requires them to be treated as parties when served, cannot permit the interests involved to be reached by a notice which appears to be drawn on a different theory. This notice makes no reference to the real nature of the proceeding as one to enforce a lien, or to the writ as issued against specific property, and no one reading it would be informed what remedy was sought under it. The writ was not issued against the goods and chattels of McMil-

lan, and the sheriff's return states explicitly that the owners are different. Almost immediately after the notice was first published, those owners bonded the property, and were known, and they are named as defendants in the declaration. As a proceeding *in rem*, as well as *in personam*, the property seized was an essential element in the controversy, and the only ultimate basis of relief in the absence of a personal liability.

The defendant McMillan could not be bound by a judgment in which there was neither personal nor a valid constructive notice. The owners could not be expected to be able to know the precise dealings between him and the laborers. If they submitted to a judgment to which he was not a party, it would be no defense to them against his action for compensation if it turned out to be unfounded in fact, in whole or in part. The statute throughout contemplates that until a case is made against him there can be no judgment. There are few, if any, other cases where a statute providing for constructive notice does not provide specifically for every case, and it has always been held that such special provisions must be complied with, and are jurisdictional.

In *Freeman v. Freeman*, 1 Mich. 480, it was held by this Court that under a divorce law which required the notice to an absent defendant to state the nature of the petition, the usual chancery notice applicable to suits in general was not sufficient, and the decree was held void for want of jurisdiction. No intendment has ever been made to fill up any substantial defect in such notices. It is a principle of universal jurisprudence that there can be no jurisdiction without adequate notice.

We are inclined to think that while this statute is very defective, yet it was probably intended to authorize a notice which should give the same information as to the nature of these proceedings as is given by ordinary

attachment notice in regard to attachment suits. A person who knows that his own property has not been seized will not usually care to appear and run the risk of a personal judgment. But if the suit is one where his interests will be affected at all by the judgment, he may see fit to intervene. A notice which accurately sets out the nature of the proceeding would give sufficient information to put him in a position to take any needful precaution for his own safety. There can be no great difficulty in giving such a notice, and we think the statute may justify it. Such notices are so common in proceedings *in rem* that it is not straining the law to presume it was intended the analogies should be followed in such a way as to give substantially similar information.

The judgment was not authorized by law, and should be reversed, with costs of both courts.

The other Justices concurred.