WILLIAM FEDERSPIEL v. EDWARD JOHNSTONE AND CERTAIN LOGS OF JOHN B. KANOUSE AND HITCHCOCK & BIALY.

*Log-lien proceedings—Service of attachment—Verdict—Judgment.*

1. In an attachment suit under the log-lien law of 1887 (Act No. 229) it is not necessary to appraise the property, or to serve a *certified* copy of the writ or the inventory upon a log-owner who is not the defendant in the suit; such service being governed by section 6 of the act.

2. The lien of a laborer under the log-lien law of 1887 does not depend upon the state of the accounts between the contractor for whom he labors and the log-owner, whose liability is limited to the contract price, which he pays to the contractor at his peril.

3. The correction by the court of a verdict in a log-lien suit in excess of plaintiff's claim by entering a judgment for a smaller sum, and less than the amount shown to be due plaintiff on the trial, is held not to authorize the granting of a new trial.

Error to Arenac. (Cobb, J.) Argued June 11, 1891. Decided July 28, 1891.

Attachment under log-lien law of 1887. Defendant log-owners bring error. Affirmed. The facts are stated in the opinion.

*E. W. Porter,* for appellants, contended *as stated* in the opinion.

*Lawrence McHugh,* for plaintiff, contended for the doctrine of the opinion.

MORSE, J. This action was brought under Act No. 229, Laws of 1887, known as the "Log Lien Act." Nine claimants united their claims, and designated one of their

number, the plaintiff, to prosecute the suit. The logs. and timber attached were the property of eight different individuals and firms, who had separate lumbering contracts with the defendant Johnstone.

The appellants, the defendants Kanouse and Hitchcock & Bialy, claim that the judgment is void so far as their logs are concerned, and should be reversed in so far as it affects said logs, for the following reasons:

1. The officer, a deputy sheriff of Arenac county, who served the writ of attachment upon the appellants did so by handing to them personally a copy of the writ of attachment, and also of an inventory of the goods and chattels seized by him, but such copies were not certified, nor did he serve any certified copy of either the writ of attachment or inventory upon them, or either of them, and no appraisal was made of the attached property.

2. There was nothing owing from the appellants to the contractor, Johnstone, at the time this suit was begun, and the jury should have been instructed in such case to find a verdict for the appellants.

3. The plaintiff did not prove affirmatively the amount of his individual claim against the logs of appellants.

We will review these objections in their order.

1. It is claimed by the counsel for the log-owners that Act No. 229, Laws of 1887, repealed all former acts relative to log liens, in which it was provided that it was not necessary to make an inventory and appraisal (see section 11, Act No. 145, Laws of 1881; How. Stat. § 8422; *Streeter v. McMillan*, 74 Mich. 126), and that section 11 of the act of 1887 provides that—

" All writs of attachment issued under the provisions of this act, by any of the circuit or justices' courts of this State, shall be served and returned as ordinary writs of attachment are served and returned in said courts, respectively, except as herein otherwise provided."

That, in ordinary writs of attachment in the circuit court, an appraisal must be made and returned with the writ (How. Stat. § 7992), and a copy of the attachment

and inventory must be served upon the defendants, certified by the officer serving the same (Id. § 7991). See, also, *Stearns v. Taylor*, 27 Mich. 89.

Section 11, however, of the act under consideration, is qualified by the words, "except as herein otherwise provided." By turning to section 6 of the act, we find a provision for service upon the owners of logs when the defendant in attachment is not the owner of the property or products described in the writ. The officer executing such writ—

"Shall serve, or cause to be served, a copy of said attachment on or before the return-day mentioned in said writ upon the owner of said products, or any of them, their proper agent or attorney, if such owner, or agent, or attorney be known to him, and residing in this State."

It will be seen that the service ol an inventory is not required, or that the copy of the writ shall be certified. This section 6 is the only section, except section 11, relating to the service of the writ, and no especial mode of service is anywhere mentioned to be made upon the defendant in attachment, except in section 6, where it provides that he shall be summoned to appear before said court, at the time and place therein specified, the same as in ordinary writs of attachment in circuit and justices' courts. We are of the opinion that the service mentioned in section 11 is not required in the case of a log-owner who is not the defendant in attachment, and who is notified of the proceedings, so that he may protect his interests in the products attached; and that the notice to be given is the one provided for in section 6. In this case there is no claim that the copy of the writ and inventory served upon the appellants was not a true copy, and we see no good reason for quashing the proceedings because such copy was not certified by the offi-

cer to be a true copy, when the statute does not in terms require it.

We do not think that an appraisal of the property was necessary. The statute does not specify that any shall be made, unless by implication, in section 11. By an act of the Legislature in 1885, property of the kind taken under this writ is not, any of it, exempt from sale for payment of labor debts.[1] Therefore an appraisal could be of no benefit to the log-owner, as he has no exemption to select, and a bond that he may give for a release of the property attached has no relevancy to the amount or value of the goods attached, but is to be in a sum double the amount claimed in the writ. It must also be remembered that in these cases the logs or other products are seldom moved from the place where they are found; the law expressly providing that they shall not be seized upon or detained while in transit from the place where banked or deposited to any place within this State, but in such case, if the logs are in the hands of a person or corporation "driving or holding the same" for the purposes of being driven, sorted, or delivered to the owners, the sheriff who makes the levy shall serve a copy of the attachment upon such person or corporation, and, when driven or sorted out, may receive such products from said person or corporation, which person or corporation shall hold his or its lien under the statute, notwithstanding the levy of the sheriff. When sale is made, the proceeds are to be distributed *pro rata,* under the special order and direction of the court. Laws of 1887, § 6, Act No. 229; 3 How. Stat. § 8427*f.*

2. The circuit judge was requested to instruct the jury that—

"If there was nothing owing to the defendant John-

---

[1] 3 How. Stat. § 7717*a*2.

stone, from the log-owners or any of them, at the time these attachment proceedings were commenced, then the lien in that case would not attach to such logs, upon which there was nothing owing to Johnstone from said owners."

Johnstone testified that he did not have anything due him from the appellants when these proceedings were begun; that he had been paid in full. Under the log-lien law, the lien of the laborer does not depend upon the state of the accounts between the contractor for whom he labors and the owner of the logs. It was not intended that the owner could escape the lien that the law, under certain circumstances, places upon his logs or timber in favor of those working thereon, by paying the contractor who hires them regardless of their claims. If such were the law, the intent of the statute might easily be defeated. The owner cannot be made liable for any amount more than he contracts to pay for the getting out of the logs, or any other labor to be performed upon them, but to the amount of such contract price he pays the contractor at his peril. We see no constitutional objection to this law in this regard. It cannot be difficult for the log-owner to guard against loss in this respect, as he ought to be able to inform himself whether or not the laborers have been paid, and to withhold a payment to the contractor until he is satisfied that their claims have been or will be discharged.

3. It seems that defendant Johnstone gave to plaintiff a time order for his work amounting to $54, in payment of his work in full on the Kanouse and Hitchcock & Bialy logs. Plaintiff was unable to state just how much there was due him for work on these particular logs. One Mudge, the book-keeper of Johnstone, who drew this order and gave it to plaintiff, testified that he put some of another man's time (Fabing) into to this order given to

plaintiff, but he could not or did not state how much. We think that the plaintiff was presumptively entitled to the amount of this order, less $5, which was shown to have been paid upon it. At least, the jury, under the circumstances, were justified in finding that this amount was due Federspiel for his work, in the absence of any reason being given why any portion of Fabing's time should have been included in it, without mention, when time orders were given each of the men separately for the balance due them. They were authorized to find that it was not true that any of Fabing's work was included in this order.

The jury brought in a verdict for the sum of $43.75, as a lien upon the Hitchcock & Bialy logs, and of $62.50 upon the logs belonging to Kanouse, this being considerably in excess of the amount claimed by plaintiff. The court in his judgment corrected this verdict, and entered judgment for $21.04 against the Hitchcock & Bialy logs, and $30.06 against the Kanouse logs. He did not allow, it will be seen, the full amount of the order, with interest to plaintiff, the debt drawing interest from March, 1888, to the time of the trial, which took place in November, 1889. We can see no injustice in this correction, and it does not authorize the granting of a new trial.

The judgment is affirmed, with costs.

CHAMPLIN, C. J., McGRATH and LONG, JJ., concurred. GRANT, J., did not sit.